**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

_____

)
CHAD BURMEISTER                                    )
                                                   )
     Plaintiff,                              )
                                                   )
v.                                                 )     Case No.  1:21-cv-12139
                                                   )
                                                   )
JOHN MICHAEL BARROWS                               )
                                                   )
-and-                                              )
                                                   )
J.BARROWS, LLC                                     )
d/b/a JB SALES                                     )
                                                   )
     Defendants.                             )
_____)

## COMPLAINT AND JURY DEMAND

     Plaintiff, Chad Burmeister ("Plaintiff" or "Burmeister"), by counsel, pursuant to Rule 3 of the Federal Rules of Civil Procedure (the "Rules"), files the following Complaint against Defendants, John Michael Barrows and J.Barrows, LLC d/b/a JB Sales, jointly and severally.

     Plaintiff seeks (a) compensatory damages and punitive damages in the total sum of **$7,000,000.00**, (b) prejudgment interest on the principal sum awarded by the Jury from January 8, 2021 to the date of Judgment at the rate of nine percent (9%) per annum pursuant to § 13-21-101(1) Colorado Revised Statutes, and (c) court costs – arising out of the Defendants' defamation.

## I.  NATURE OF ACTION

1.      This is an action for defamation.  Chad Burmeister is a husband, father and businessman.  He suffered substantial injury to his reputation after Defendants republished scandalous accusations falsely linking Burmeister to the January 6, 2021 storming of the United States Capitol.  Defendants' false statements exposed Burmeister to public scorn, ridicule and contempt.  Defendants attributed to Burmeister actions he never took and statements he never made.  Defendants falsely imputed to Burmeister the commission of Federal crimes and other wrongdoing that severely prejudiced Burmeister in his employment and profession, lowered him in the estimation of the community, and deterred third persons from associating or dealing with him.

2.      Burmeister brings this action to clear his name and recover damages for the injuries inflicted upon him by the Defendants.

## II.  PARTIES

3.      Burmeister is a citizen of Colorado.  He is a private individual. Burmeister is married with two children.  In 2017, he founded ScaleX.ai,  a company that delivers artificial intelligence and automation services to companies looking to augment their sales teams and increase sales pipelines.  Burmeister is an author of multiple books. He was voted by the American Association of Inside Sales Professionals as a Top 25 Inside Sales Leader for 10 years in a row.  He was former leader of sales teams at multiple companies including: Cisco-WebEx, Riverbed Technology, ON24, RingCentral, and ConnectAndSell.  Burmeister graduated from Loyola Marymount University with an MS in Computer Information Sciences.  https://www.scalex.ai/team-members/chad-burmeister].

4.      John Michael Barrows ("Barrows") is a citizen of Massachusetts. Barrows has had a vendetta against Burmeister for many years.

5.      Barrows is the owner, manager and CEO of Defendant J.Barrows, LLC ("JB Sales"). [https://www.linkedin.com/in/johnbarrows].   JB Sales, also known as "JBarrows Sales and Training", is a limited liability company organized under the laws of Massachusetts with a principal place of business at 10 Post Office Square, 8th Floor, Boston, MA 02109.  None of the members of JB Sales is a citizen of Colorado.  JB Sales is in the business of sales training and consulting.   According to its website, www.jbarrows.com, "JB Sales was founded by John Barrows as a response to the incredibly limited amount of formal academic sales training that exists for the #1 global profession.  Through decades of experience, he created On-Demand and Sales Training programs offering dynamic sales education to corporations and individuals online, on-site, and remotely." [https://jbarrows.com/about/].   Barrows claims that he has provided sales training and consulting services to some of the world's fastest-growing companies like Salesforce.com, Google, and LinkedIn. [https://jbarrows.com/trainer/john-barrows/]. As part of the business of JB Sales, Barrows operates multiple social media properties, including accounts on Instagram, Twitter and LinkedIn.  Barrows has 5,880 followers on Instagram [https://www.instagram.com/johnmbarrows/] and 11,300 followers on Twitter. [https://twitter.com/JohnMBarrows].   He has over 379,115 followers on LinkedIn. [https://www.linkedin.com/in/johnbarrows].  At the time of the defamation at issue in this case, Barrows shared 1,878 mutual connections on LinkedIn with Burmeister.

### III.   JURISDICTION AND VENUE

6.     The United States District Court for the District of Massachusetts has subject matter jurisdiction over this action pursuant to Title 28 U.S.C. § 1332 (Diversity). The parties are citizens of different States.  The amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

7.     Defendants are at home in Massachusetts and are both subject to general personal jurisdiction in Massachusetts.

8.     Venue is proper in this Court pursuant to Title 18 U.S.C. § 1391(b)(1).

### IV.   FACTUAL ALLEGATIONS

9.     On January 7, 2021, during a segment of *Next with Kyle Clark ("Next")* and in an accompanying online article and related tweets, Kyle Clark ("Clark") and Tegna, Inc. (Tegna") published the following statements/images about Burmeister:

- Burmeister "claimed to storm the [Capitol] building";
- Burmeister was at the Capitol "boasting about what was happening";
- On January 6, 2021, Burmeister posted the following message on Facebook, "bragging" that he was the "first guy to storm the capitol today":



- "This morning [January 7, 2021], he [Burmeister] changed the caption to read":



- "When I asked him about it, he told me he did not enter the Capitol, then he said I wasn't allowed to show you this photo";

- "Burmeister traveled from Colorado to Washington expecting trouble";

- "His Facebook page is full of QAnon conspiracies about the storm, that's the moment when QAnon believers think that President Trump is going to round up and execute his opponents";

- "Burmeister emailed to say, once again, that he does not believe he broke any laws".

[https://www.9news.com/article/news/local/next/colorado-lawmaker-conspiracy-theory-antifa-capitol-trump-supporter-republican-baisley/73-d6098e31-72f4-46c8-8113-915e32d20e4a (each a "Statement", and collectively, the "Statements")].

10. Clark and Tegna's Statements are materially false. Burmeister never claimed that he "stormed the [Capitol] building". Clark and Tegna made that up. Burmeister never told Clark and never posted that *he* was the "first guy to storm the capital [sic]" on January 6, 2021. Rather, Burmeister posted a photo of himself with

another individual.  That other individual clearly signaled "first" or "#1" with his hand and finger.  That other individual claimed to be the "first guy to storm the capital".  Clark and Tegna intentionally took the words out of context and used them to convey a false representation of fact about Burmeister.  By representing that Burmeister "changed the caption" of a post, and by highlighting the alleged change for viewers, Clark and Tegna implied and insinuated that Burmeister was duplicitous and guilty and was covering his tracks.  According to the Federal Bureau of Investigation ("FBI") and the Department of Homeland Security ("DHS"), "QAnon" is a "domestic violence extremist" ("DVE") group and a "domestic terrorism threat".  The *Wall Street Journal* reports that adherents of QAnon were among the "most prominent members of the mob" who stormed the United States Capitol in Washington, D.C. on January 6, 2021. https://www.wsj.com/articles/what-is-qanon-what-we-know-about-the-conspiracy-theory-11597694801?mod=article_inline].  Burmeister's Facebook page is not full of QAnon conspiracies about any "storm", and he is not a "QAnon believer".  Burmeister does not have affiliations with "QAnon" or any other domestic terror and extremist group.  Clark and Tegna's Statements were (and are) likely to cause reasonable readers to think significantly less favorably of Burmeister than they would if they knew the truth.

11.    Viewed in context and as a whole, the defamatory gist and implication of Clark and Tegna's Statements is that Burmeister was part of the "insurrectionist mob" that stormed the United States Capitol on January 6, 2021.  The Statements imply that Burmeister committed sedition, insurrection, obstruction of an official proceeding, impeding an officer or employee of the United States in the performance of his official duties, trespassing, disorderly conduct and other Federal and State crimes and that he is

dishonest, deceptive, deceitful, traitorous and lacks integrity.  Through a careful choice of words, Clark and Tegna juxtaposed a series of facts so as to imply a defamatory connection between them.  Clark and Tegna also created a defamatory implication by omitting facts.

12.    Clark and Tegna's Statements were instantly understood to convey a defamatory meaning, *e.g.*:

https://twitter.com/MountainsStars/status/1359965186543681538
("The Colorado CEO who posted he was the first to storm the Capitol got multiple rounds of bailout money.  As far as I know, he hasn't been arrested yet");

https://twitter.com/MountainsStars/status/1347618480548286465
("How many of those storming the Capitol got taxpayer-funded bailout $$, like Coloradan Chad Burmeister's ScaleX?");

https://twitter.com/espeyraunza/status/1347377673501368321
(Burmeister was "lying about what he did at the capitol");

https://twitter.com/nickatech/status/1347379505380417536
("Hopefully you referred through the link FBI posted @KyleClark");

https://twitter.com/ScratchCatering/status/1347381446076485632
("I heard the FBI is seeking leads on who these terrorists were!  Oh, Hey @FBI here you go!");

https://twitter.com/CRobertBuchanan/status/1347368476051050497
("Hey @Infusionsoft you might want to rethink doing business with this guy");

https://twitter.com/InstanaHQ/status/1347612392205602817
("We do not have a working relationship with Chad Burmeister or ScaleX, and have requested for any reference to Instana be removed from their website.  We denounce terrorism of any kind, all forms of violence as well as enticing others to violence");

https://twitter.com/WesleyDavis/status/1347383346209443840
("Gotta wonder how all these professionals on his company's page are going to feel about supporting domestic terrorism … #DomesticTerrorist");

https://www.linkedin.com/posts/alansaldich_normally-i-stay-away-from-political-commentary-activity-6753427709843656704-2aIv/

("Normally I stay away from political commentary on LinkedIn, but today I'd like to highlight the actions of a former colleague, Chad Burmeister … who participated in the seditious takeover of the capitol on Wednesday. I have severed my connection with him here, and encourage all who are connected with him to do the same. It's disgraceful. If you want to watch the video, it's part of this: [hyperlink to Clark/Tegna broadcast]");

https://www.linkedin.com/posts/samschooley_kyle-clark-on-twitter-activity-6753396403533438977-TYF5/

("Shameful. Working with Scale-X means supporting terrorists. LinkedIn you need to deplatform these terrorists. I call on my entire network and community to boycott Chad and Scale-X and call on LinkedIn to ban him from this platform. Thank you KUSA-TV, 9NEWS and [@KyleClark] for breaking this story. #terrorism #AttackontheCapitol #boycott #BoycottScaleZ");

https://www.linkedin.com/feed/update/urn%3Ali%3Aactivity%3A6753382654877425664/?actorCompanyId=27109395

("I was shocked this morning to learn that Chad Burmeister (founder/CEO of ScaleX.ai) … was one of the thousands of domestic terrorists who gleefully stormed the US Capitol building on January 6. He was actually SO proud of his act of sedition and betrayal of his country, that he posted it on LinkedIn! … To all who have met Chad, or clients of ScaleX.ai, I would urge you to consider this: why on earth would you trust a man with your business, when you can't even trust him to not participate in a violent coup against our government?").

## A. _Defendants Are Liable For Republication Of The Defamatory Statements_

13.    It has long been stated that "[t]alebearers are as bad as talemakers". _Harris v. Minvielle_, 19 So. 935, 928 (La. Ct. App. 1896); _see id. Liberty Lobby, Inc. v. Dow Jones & Co., Inc._, 838 F.2d 1287, 1298-1299 (D.C. Cir. 1988) ("The common law of libel has long held that one who republishes a defamatory statement 'adopts' it as his own, and is liable in equal measure to the original defamer") (citing W. Keeton, D. Dobbs, R. Keeton & D. Owen, _Prosser and Keeton on the Law of Torts_ 799 (5th ed. 1984) ("Every repetition of the defamation is a publication in itself, even though the repeater states the source ... or makes clear that he himself does not believe the imputation.") (footnotes omitted), _cert. denied_, 488 U.S. 825 (1988); _Appleby v. Daily Hampshire_

*Gazette*, 395 Mass. 32, 36, 478 N.E.2d 721 (1985) ("[T]he republisher of a defamatory statement 'is subject to liability as if he had originally published it.'") (cited in *Flynn v. Associated Press*, 401 Mass. 776, 780 fn. 5, 519 N.E.2d 1304 (1988)); *see Nunes v. Lizza*, 12 4th 890, 899-900 (8th Cir. 2021) ("There is a distinction in defamation law between an original publication and a republication" – a republication occurs when the "subsequent publication is intended to and actually reaches a new audience … A speaker who repeats a defamatory statement or implication after being informed of its falsity 'does so at the peril of generating an inference of actual malice.'") (citations and quotations omitted).

14.     Prior to January 8, 2021, Barrows held a grudge against Burmeister for many years.  Within a few months of starting ScaleX.ai, Burmeister reached out to Barrows (and JB Sales) to see if he wanted to partner with ScaleX.ai.  Burmeister asked Barrows to sign a Mutual Non-Disclosure Agreement (MNDA).  Barrows represented that he did not sign MNDAs – that "my word is my bond".  In reliance on Barrows' word, Burmeister introduced Barrows to a ScaleX.ai client that Burmeister was white labeling (called Nova.ai).  Barrows proceeded to cut Burmeister out of conversations, and established a direct relationship with Nova.ai, something Barrows said he would not do.  Burmeister showed disappointment in this decision via a phone call with Barrows' business partner because Barrows had promised he would buy directly through ScaleX.ai.  Barrows called Burmeister a "douche".  Barrows held a grudge because Burmeister had pointed out Barrows' disloyalty and breach of fiduciary duty.  In January 2021, Barrows saw the opportunity for revenge.

15.     Beginning on January 8, 2021, Barrows and JB Sales embarked on a deliberate campaign of defamation against Burmeister.

16.    Barrows and JB Sales used multiple social media properties to target Burmeister.  They republished Clark and Tegna's false and defamatory Statements on multiple occasions and added their own calumny.

a.    On January 8, 2021, Barrows republished the Statements on Instagram together with a photograph of Burmeister and the following message:





b.      On January 8, 2021, Barrows replied to one of Clark's tweets with the following message:



c.      Barrows did not wait for Clark to "expose" Burmeister.   On January 8, 2021, Barrows spitefully republished the Statements to his 379,115 followers on professional networking site LinkedIn, together with the following message insinuating that Burmeister had engaged in illegal or immoral conduct:



        d.      On January 9, 2021, Barrows published additional false and defamatory statements on LinkedIn, including that Burmeister was a terrorist:



        e.      Barrows did not stop.  On February 5, 2021, Barrows contacted a ScaleX.ai board member (Howard Dover), and published the following email:

> **From:** Dover, Howard <howard.dover@utdallas.edu>
> **Sent:** Friday, February 5, 2021 7:32:26 AM
> **To:** John Barrows <john@jbarrows.com>
> **Subject:** Re: Dr. Howard Dover replied to your comment
>
> Thank you John.  I appreciate the heads up.
>
>  Hard to say how long we want to wait to acknowledge a colleague who has a job to do and did something to make that job harder to do.
>
> Did not intend to damage your brand, please feel free to delete my post from this thread if it was yours.
>
> Howard
> Sent from my iPhone
>
>     On Feb 5, 2021, at 8:03 AM, John Barrows <john@jbarrows.com> wrote:
>
>     Hi Howard,
>
>     I saw your post on Linkedin tagging Chad Burmeister.  Just as a heads up, you might want to avoid any association with him moving forward: https://twitter.com/kyleclark/status/1347359395148034048
>
>     **John Barrows - *CEO***
>     www.jbarrows.com
>     C: 617-529-7271
>     *Check out our new On-Demand platform:* https://ondemand.jbarrows.com/

      f.    Barrows also republished Clark and Tegna's Statements on the LinkedIn pages of ScaleX.ai sales agents in Colorado, *see, e.g.*:



> **Barrows**
>
>     Rich Blakeman                      Friday, January 8, 2021 at 4:02 PM
>     To:   Chad Burmeister
>
> He tried to post Kyle's article as a comment on one of my LinkedIn posts.
>
> I deleted it. A-hole.

Barrows clearly intended to reach and actually reached several new audiences by repeatedly publishing on Instagram, Twitter and LinkedIn posts and messages about Burmeister and a link to Clark and Tegna's Statements.

      17.    In addition to the posts and messages identified in paragraph 16 above, Barrows published numerous other posts on LinkedIn that contained the same false and defamatory statements, including accusations that Burmeister committed the crimes of sedition, insurrection, treason and terrorism. *TransUnion, LLC v. Ramirez*, 141 S. Ct. 2190, 2208-2209 (2021) ("Under longstanding American law, a person is injured when a defamatory statement 'that would subject him to hatred, contempt, or ridicule' is published to a third party.  TransUnion provided third parties with credit reports containing OFAC alerts that labeled the class members as potential terrorists, drug traffickers, or serious criminals.  The 1,853 class members therefore suffered a harm with a 'close relationship' to the harm associated with the tort of defamation.  We have no trouble concluding that the 1,853 class members suffered a concrete harm that qualifies as an injury in fact.") (citation omitted); *Coker v. Barr*, 2020 WL 9812034, at * 8 (D. Colo. 2020) ("Plaintiff alleges defendants have defamed him by labeling him as someone

"known or suspected" to be linked to terrorists or terrorist activity.  Indeed, it is hard to imagine a greater stigma than being associated with terrorism in our post-9/11 world.").

18.     Many people that Burmeister knows called Barrows out on his posts and suggested he remove them.  Barrows refused.

19.     Burmeister suffered actual injury and special damages as a result of the publications and republications by Barrows and JB Sales, including insult, embarrassment, humiliation, mental anguish and suffering, pain, injury to personal and professional reputation, diminution in the value of his shares of ScaleX.ai, loss of speaking and other engagements, costs incurred to repair and defend his reputation, loss of business and income, career damage, loss of opportunity to advance, impaired and diminished earning capacity and loss of future earnings.  Burmeister and his family have been repeatedly threatened.  Anonymous callers threatened Burmeister's life and hoped he would be sodomized in jail.  One caller stated that a "hit" had been put out on Burmeister.  Burmeister reached out to the FBI to see if they had a need to speak with him.  The FBI told Burmeister's attorney that they did not need to speak with Burmeister.  Burmeister continues to suffer from extreme anxiety, sleeplessness, loss of self-esteem, fear of being unable to provide for and protect his family, fear of what colleagues and members of the community think of him, and fear that some crazy person will appear at his doorstep with a gun.

## COUNT I – <u>DEFAMATION</u>

20.     Burmeister restates paragraphs 1 through 19 of this Complaint and incorporates them herein by reference.

14

21.     Barrows and JB Sales made, published and republished numerous false factual statements of and concerning Burmeister, including Clark and Tegna's Statements.  These false statements are detailed verbatim above.  Barrows and JB Sales published the false statements in Colorado and elsewhere without privilege of any kind.

22.     Barrows and JB Sales' statements constitute defamation *per se*.  The statements accuse and impute to Burmeister one or more Federal crimes and criminal offenses.  The statements are incompatible with Burmeister's business as a technology executive and also prejudice Burmeister in his profession and employment as the CEO of a business. *Gordon v. Boyles*, 99 P.3d 75, 79 (Colo.App. 2004) (a statement is defamation per se if it imputes, *inter alia*, a criminal offense or "a matter incompatible with the individual's business, trade, profession, or office."); *Walker v Associated Press*, 160 Colo. 361, 366-367, 417 P.2d 486 (1966) ("Our study of this news release of October 3, 1962 leads us to the conclusion that this particular publication is libelous per se in that it does charge the plaintiff with the commission of a crime.  At the very least this news release charges plaintiff with taking the 'command' of a theretofore unorganized mob which was resisting and interfering with United States Marshals who were about their official business by 'charging' them, by hurling 'bricks, bottles, rocks and wooden stakes toward the clustered marshals.'  One can, of course, be charged with the commission of a crime even though it is not done in the exact language of the statute.  From our reading of the news release plaintiff was clearly charged with resisting and interfering with U.S. Marshals who were about their official business, and was also charged with aiding and abetting others who were similarly engaged in various acts constituting resistance and interference.").

23.     By publishing the statements to Barrows' followers on Instagram, Twitter and LinkedIn, Barrows and JB Sales knew or should have known that the statements would be republished by third parties to Burmeister's detriment.  Republication by Barrows and JB Sales followers and users of LinkedIn, Instagram and Twitter was the natural and probable consequence of Barrows and JB Sales' actions and was actually and/or presumptively authorized by Barrows and JB Sales.  In addition to its original publications and republications, Barrow and JB Sales are liable for the third-party republications of the false and defamatory statements under the republication rule.

24.     Barrows and JB Sales lacked reasonable grounds for any belief in the truth of their statements, failed to conduct a reasonable and adequate investigation prior to publication and republication, and acted negligently in failing to use reasonable care to fully determine the true facts and applicable laws.  In spite of Burmeister's express denials and efforts to explain the situation, Barrows continued to publish and republish false and defamatory statements about Burmeister on LinkedIn, where Barrows knew he was inflicting damage on Burmeister.

25.     Barrows and JB Sales published the statements with actual malice. Barrows did not know Clark.  Barrows blindly republished Clark and Tegna's fabricated statements.  At the time of the republications, Barrows did not know whether the Statements were true or false.  Barrows and JB Sales made it appear as if Burmeister was a leper to be avoided at all costs.  Barrows and JB Sales did not have one shred of evidence to support the statement that Burmeister was a "terrorist" or that Burmeister "stormed" the Capitol building or that he committed any crimes on January 6, 2021 or any other day. *St. Amant v. Thompson*, 390 U.S. 727, 732 (1968) ("Professions of good

faith will be unlikely to prove persuasive, for example, where a story is fabricated by the defendant [or] is the product of his imagination"); *Curtis Publishing Co. v. Butts*, 388 U.S. 130, 153 (1967) (deliberate falsification constitutes actual malice); *Weyrich v. New Republic, Inc.*, 235 F.3d 617, 627 (D.C. Cir. 2001) ("Although we do not here dissect each verifiable statement to provide an exhaustive list for the District Court, potential candidates include the author's observation that appellant, in response to Bill Pascoe's perceived betrayal, 'snapped,' erupted in a 'volcano of screaming,' 'froth[ed] at the mouth,' and 'dispatched a letter to Pascoe's fiancée, questioning Pascoe's loyalty and implying that he was unfit for marriage.'  If indeed the story is fabricated, we cannot say that it is not reasonably capable of any defamatory meaning—it arguably makes appellant appear highly volatile, irrational, unsound and otherwise "odious, infamous, or ridiculous."); *Hudnall v. Sellner*, 800 F.2d 377, 382 (4th Cir. 1986) (evidence supported finding of actual malice where the legitimate inference drawn from testimony was that defendant "knowingly concocted the accusations out of whole cloth"), *cert. denied,* 479 U.S. 1069 (1987); *ExpertConnect, LLC v. Fowler*, 2020 WL 3961004, at * 3 (S.D.N.Y. 2020) (plaintiff alleged that the defendants "'engaged in a concerted effort to deliberately disparage the business reputations of Fowler, Parmar, and Strafluence with false statements' that they had committed a serious crime and were under investigation.  These statements were made 'with full knowledge of their falsity' because '[t]here has never been any criminal action commenced against Fowler or Parmar, no investigation of any sort and, to be sure, no allegations of criminal conduct.'"); *Watson v. NY Doe 1*, 2020 WL 635843, at * 7 (S.D.N.Y. 2020) ("This is a case where the alleged false statements were allegedly based on the direct knowledge of the alleged defamer that the plaintiff

alleges is false.  A fair inference from the Complaint is that NY Doe 2 knew that the plaintiff did not rape her but falsely made that accusation.  Those circumstances are sufficient to infer actual or constitutional malice on the part of NY Doe 2 because she is alleged to have firsthand knowledge of whether the plaintiff did or did not rape her."); *Ratner v. Kohler*, 2018 WL 1055528, at * 9 (D. Haw. 2018) ("the Complaint here alleges that Defendant Kohler knew her Facebook post was false when she published it because the events she recounted never took place.  Plaintiff Ratner alleges that Defendant's Facebook post was wholly fabricated."); *Miller v. Watkins*, 2021 WL 924843, at * 18 (Tex App. 2021) ("If Miller indeed fabricated her allegations, then she by definition entertained serious doubts about them and had a high degree of awareness of the statements' falsity").  Barrows and JB Sales acted with reckless disregard of the truth or falsity of the statements.  They had no basis for their erroneous statements about Burmeister.  There were no official reports of Burmeister storming the Capitol building or playing any role in any insurrection or terrorist act.  Barrows and JB Sales made no effort to learn the truth.  They willfully chose not to learn the truth.  Any investigation they conducted was grossly inadequate.  Barrows and JB Sales seized upon the hysteria surrounding January 6 to market a false narrative about Burmeister to injure his reputation in sales.  Barrows and JB Sales' motive in publishing and republishing the statements and the fact that they purposefully employed a deficient verification process supports an inference of actual malice. *Farmland Partners Inc. v. Fortunae*, 2021 WL 1978739, at * 2 (D. Colo. 2021).  Barrows' failure to verify defamatory statements meant that most of the asserted "facts" were merely fabrications.  As an experienced marketing and sales expert, Barrows was keenly aware that the events of January 6, 2021 were

emotionally and politically super-charged, and that his statements, when viewed in the context of an "insurrection" and invasion of our nation's Capitol, had an instantaneous opprobrious connotation, especially when published on LinkedIn.  The use of terms such as "terrorist" with obvious pejorative connotations without underlying factual support is further evidence of Barrows and JB Sales' reckless disregard. *Burns v. McGraw-Hill Broadcasting Co., Inc.*, 659 P.2d 1351, 1361-1362 (Colo. 1983) (citing *Kuhn v. Tribune-Republican Publishing Co.*, 637 P.2d 315, 319 (Colo. 1981)); *Mondragon v. Adams County School Dist. No. 14*, 2017 WL 733317, at * 14 (D. Colo. 2017) ("Mr. Sanchez acted willfully and wantonly and with actual malice by 'purposefully pursuing a course of action' that he knew was likely to result in negative employment consequences to Dr. Mondragon."); *Hertz v. Luzenac America, Inc.*, 2006 WL 1028865, at * 25 (D. Colo. 2006) ("The record is devoid of evidence that Luzenac, before accusing Mr. Hertz of misappropriation, undertook to ascertain whether it had any secret information capable of misappropriation … The jury must determine whether Luzenac's ignorance was willful; whether Luzenac's decision-makers entertained serious doubts as to the secrecy of the information is a fact question.").  Importantly, Burmeister notified Barrows in writing on January 9, 2021 that certain of the Statements, including that Burmeister had been the first to storm the Capitol building, were false.  In spite of Burmeister's advice, Barrows and JB Sales continued to publish false and defamatory statements about Burmeister, including that he was a terrorist and that he had stormed the Capitol building.  This is further evidence of actual malice. *Nunes v. Lizza*, 12 F.4th 890, 901  (8th Cir. 2021) ("Republication of a statement after the defendant has been notified that the plaintiff contends that it is false and defamatory may be treated as evidence of reckless

disregard.") (quoting Restatement (Second) of Torts § 580A cmt. d (Am. L. Inst. 1977));
*see id. Castellani v. Scranton Times, L.P.*, 633 Pa. 230, 124 A.3d 1229, 1235 (2015)
(same) (citing and quoting *Weaver v. Lancaster Newspapers, Inc.*, 592 Pa. 458, 926 A.2d
899, 905-906 (2007)).

26.     Barrows and JB Sales' conduct constitutes defamation and defamation by
implication.

27.     As a direct result of Barrows and JB Sales' defamation, Burmeister
suffered presumed damages, actual injury and special damages in a sum to be determined
by the Jury, but not less than $5,000,000.00.

28.     Each of Barrows' social media properties expressly advertises and
promotes the business of JB Sales.  The posts, tweets and emails at issue in this action
were published by Barrows in his capacity as CEO of JB Sales, during normal work
hours, from JB Sales' place of employment, and using computers that belonged to JB
Sales.  JB Sales is liable for Barrows' defamation and wrongdoing under the doctrine of
*respondeat superior*.

Burmeister alleges the foregoing based upon personal knowledge, public
statements of others, and records in his possession.  Burmeister believes that substantial
additional evidentiary support, which is in the exclusive possession of Barrows, JB Sales,
Clark, Tegna, their agents and other third parties, will exist for the allegations and claims
set forth above after a reasonable opportunity for discovery.

Burmeister reserves his right to amend this Complaint upon discovery of
additional instances of Barrow's and JB Sales' wrongdoing.

## CONCLUSION AND REQUEST FOR RELIEF

WHEREFORE, Burmeister respectfully requests the Court to enter Judgment against Barrows and J.Barrow, LLC, jointly and severally, as follows:

A. Compensatory damages in the amount of $5,000,000.00 or such greater amount as is determined by the Jury;

B. Punitive damages in the amount of $2,000,000.00 or such greater amount as is determined by the Jury;

C. Prejudgment interest on the principal sum awarded by the Jury from January 8, 2021 to the date of Judgment at the rate of nine percent (9%) per annum;

D. Postjudgment interest at the maximum rate allowed by law;

E. Costs and other recoverable amounts as allowed by law;

F. Such other relief as is just and proper.


## TRIAL BY JURY IS DEMANDED


DATED:       December 28, 2021


Signature of Counsel on Next Page

CHAD BURMEISTER

By his attorneys,


*/s/ Lawrence G. Green*
Lawrence G. Green (BBO # 209060)
lgreen@burnslev.com
BURNS & LEVINSON, LLP
125 High Street
Boston, MA 02110
Telephone:  617-345-3000
Fax:  617-345-3299

Steven S. Biss (Virginia State Bar # 32972)
300 West Main Street, Suite 102
Charlottesville, Virginia 22903
Telephone:   (804) 501-8272
Facsimile:   (202) 318-4098
Email:    stevenbiss@earthlink.net
(*Motion for Admission Pro Hac Vice*
*To be Filed*)

*Counsel for the Plaintiff*